# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9711 | **DATE** | 3/18/2003 |
| **CASE TITLE** | Shannon vs. Hotel Employees and Restaurant Employees, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant Internationals Union's motion to dismiss the amended complaint [18-1] is granted in part and denied in part. Plaintiff's claims against defendant International Union are dismissed to the extent that plaintiff seeks recovery based on discriminatory conduct that occurred while International employed plaintiff as an International Organizer. Defendant Local 1's motion to dismiss Counts I and II [17-1] is denied. Defendants are directed to answer the amended complaint by 4/9/03. Status hearing is set for scheduling conference on 4/24/03 at 9:30 a.m. Parties are directed to make Rule 26(a)(1), Fed.R.Civ.P., disclosures in the meantime.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 3 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | MAR 20 2003 date docketed | 31 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 3/18/2003 date mailed notice | |
| MD | courtroom deputy's initials | 03 MAR 20 AM 8:00 FILED Date/time received in central Clerk's Office | MD mailing deputy initials | |

| | |
|---|---|
| TERESA M. SHANNON, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>HOTEL EMPLOYEES AND )<br>RESTAURANT EMPLOYEES )<br>INTERNATIONAL UNION and )<br>HOTEL EMPLOYEES AND )<br>RESTAURANT EMPLOYEES )<br>LOCAL 1, )<br>)<br>Defendants. ) | No. 01 C 9711<br>Judge Joan H. Lefkow<br><br>DOCKETED<br><br>MAR 2 0 2003 |

## MEMORANDUM OPINION AND ORDER

Plaintiff Teresa M. Shannon ("Shannon") alleges in her three-count amended complaint that defendants Hotel Employees and Restaurant Employees International Union ("International") and Hotel Employees and Restaurant Employees Local 1 ("Local"), violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, by discriminating against her on account of her sex and by retaliating against her for complaining of said discrimination (Counts I and II, respectively), and that defendants violated the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d), by providing more compensation and benefits to her male counterparts than to her (Count III). Pursuant to Federal Rule of Civil Procedure 12(b)(6), International moves for dismissal of the amended complaint against it and Local separately moves to dismiss Counts I and II against it. Jurisdiction is properly invoked pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 215(c) and 42 U.S.C. § 2000e5-(f)(3). For the reasons set forth below, the court denies in part and grants in part International's motion to dismiss and denies Local's motion to dismiss.

1

## MOTION TO DISMISS STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Kennedy v. Nat'l Juvenile Det. Assoc.*, 187 F.3d 690, 695 (7th Cir. 1999). In ruling on a motion to dismiss, the court accepts as true all well-pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon v. Page*, 291 F.3d 485, 486 (7th Cir. 2002); *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999).

## ALLEGATIONS IN THE AMENDED COMPLAINT[1]

According to the amended complaint, taken as true for purposes of this motion, Local is a labor union representing employees in the hospitality industry in the Chicago area. It also is an

---

[1] The parties submit exhibits to their briefs for this court's consideration. If matters outside of the pleadings are included in a Rule 12(b)(6) motion, they must be either expressly rejected, or the motion must be converted into a motion for summary judgment. *See Travel All Over The World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1430 (7th Cir. 1996). Nevertheless, any exhibits attached to the complaint as well as documents attached to a motion to dismiss that are referred to in a complaint and are central to the plaintiff's claims are considered as part of the pleadings. *See Wright v. Assoc. Ins. Co.*, 29 F.3d 1244, 1248 (7th Cir. 1994), citing *Venture Assoc. v. Zenith Data Sys.*, 987 F.2d 429, 431 (7th Cir. 1993).

Local attaches two charges of discrimination that Shannon filed with the Equal Employment Opportunity Commission ("EEOC") to its motion. Although Shannon refers to only one charge in her complaint, the date she attaches to that charge is different from either of the charges that Local submits. The court may consider these charges in its analysis. (Am. Compl. ¶ 4; Local Mot. Exs. 1, 2); *see Whitehead v. AM Int'l, Inc.*, 860 F. Supp. 1280, 1286 (N.D. Ill. 1994) ("A Rule 12(b)(6) motion typically focuses on the four-corners of the complaint to determine whether the complaint states a cause of action. To determine the proper scope of [the plaintiff's] Title VII complaint, however, the court must consider the accusations made in the EEOC charge."); *see also Nolen v. City of Chicago*, No. 97 C 6608, 1998 WL 111675, at *2 (N.D. Ill. Mar. 4, 1998) ("if there is a conflict between the allegations in the complaint and an exhibit, the exhibit controls."). Shannon alleges that she filed the original charge on May 15, 2000 but the original charge is date-stamped November 15, 2000. (Am. Compl. ¶ 4; Local Mot. Ex. 1.) Shannon also alleges her termination date was June 1, 2000 but she alleged in the charges that her termination date was June 2, 2000. (Am. Compl. ¶ 25; Local Mot. Exs. 1, 2.) Because a charge is made under oath, the court relies on the dates referred to in the original charge.

Shannon also attaches her affidavit and transcripts, each of which concerns the trusteeship between International and Local, to her response brief. (Pl. Resp. Ex. A, T. Shannon Aff.; Pl. Resp. Exs. B-C, In the Matter of HEREIU Trusteeship Hearing Local Union One, Tr. of Proceedings from Mar. 14-15, 2001). Shannon further files a supplemental response brief and attaches a letter from International dated December 14, 2000 to the EEOC. (Pl. Mot. to Supplement Resp. In Opp'n to Mot. to Dismiss Ex. A.) The exhibits are not attached to Shannon's amended complaint and offer facts outside the pleadings. The court disregards these exhibits.

2

affiliate of International. In August 1992, Shannon began working for Local as a part-time union organizer. Sometime in 1993, Shannon accepted a full-time position as a Business Representative with Local. Based on Shannon's hard work and accomplishments, International offered Shannon a position as an "International Organizer," which she accepted. (Am. Compl. ¶ 9.) Between July 1994 and August 1999, Shannon "continued her hard work" for both International and Local. (*Id.* ¶¶ 10-11.)

In August 1999, the Director of Organization for International advised Shannon that she would be relocated outside of Illinois. Shannon's relocation would cause her to lose her position with Local. At this same time, International was relocating only female employees in an effort to force their resignations. Although Shannon does not allege that she refused to relocate, this fact may be inferred because Shannon alleges she and other female employees "lost" their positions with International. (*Id.* ¶ 14.) Shannon, however, remained employed with Local.

In December 1999, Local was placed under the trusteeship of International. Immediately, International made changes to Local's work environment that adversely affected the female employees. The first change occurred when International confiscated vehicles provided to female employees such as Shannon. Shannon was unable to travel to various sites and meet with union members and management officials. In response to this change, Shannon met with an International official, Henry Tamerin ("Tamerin"), to complain that International's decision to remove her vehicle constituted discrimination against female employees. Shannon also complained that female employees at Local were treated less favorably than their male counterparts in compensation and benefits. Indeed, Shannon received significantly less pay than her male counterparts even though she performed work equal to or greater than they. And, unlike the men, she did not have a vehicle and cellular phone to perform her job. Shannon also pointed out to Tamerin that while she worked for both International and Local, she received a pension only from International whereas her male counterparts received pensions from both organizations.

After her meeting with Tamerin, Shannon noticed that her work environment became significantly worse. For example, Local management frequently disparaged and ridiculed Shannon in public and in a manner she had not experienced prior to meeting with Tamerin. Local also required Shannon to perform secretarial tasks including typing letters and covering telephones and the reception area for her male counterparts. Moreover, Shannon had to photograph members and their union representatives at meetings and decorate Local's bulletin board. Local previously had not required Shannon to perform these tasks; none of these tasks were part of her job responsibilities; and none of Shannon's counterparts who did not complain about discrimination had to perform these tasks.

In addition, Local assigned Shannon more work than her counterparts due to her complaints. Local assigned Shannon to work with members in the Chicago Public Schools' cafeterias. Although Local made Shannon solely responsible for this "territory" assignment, two male employees previously had worked together on this assignment. This new territory was larger than the territories covered by Shannon's counterparts who did not complain about sex discrimination. Further, it consisted of many high crime areas and, although Local previously allowed representatives to bring another representative with them to such areas, it would not allow Shannon to do the same.

In April 2000, International "began to raise issues" with Shannon concerning an alleged overpayment of income to her that occurred in approximately October, 1999. (*Id.* ¶ 25.) International "threatened" Shannon that if the overpayment dispute was not resolved to its satisfaction, it would terminate her employment with Local. (*Id.* ¶ 26.) At this same time, Local also "threatened" to terminate Shannon because of her concerns with her new territory assignment. (*Id.* ¶ 27.) The working conditions for Shannon at Local, while still "under the jurisdiction and control of" International, became intolerable. (*Id.* ¶ 28.) On June 2, 2000, Local, while still subject to the trusteeship, terminated Shannon. (*Id.*)

4

On or about November 15, 2000, Shannon filed a charge of discrimination and retaliation against International, listing a Washington D.C. address and phone number, with the Illinois Department of Human Rights ("IDHR") that was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). (Local Mot. Ex. 1, hereinafter referred to as the "original charge.") In the original charge, Shannon alleged that between January 20 and June 2, 2000, International continuously discriminated and retaliated against her. (*Id.*) She further alleged:

> I was hired by Respondent on or around August 1992 as a Business Representative. On or around January 2000 I complained to Respondent about being harassed because of my sex when my company car was taken away and given to a male co-worker[.] I also complained about the outstanding balance owed to the Pension Board by Respondent. On or around May 2000 I again complained about harassment based on my sex when Respondent failed to give me a pay raise and replace my cell phone, whereas all males had cell phones and received regular pay raises. I was paid less wages than my male counterparts for the same job. On June 2, 2000 Respondent attempted to force an assignment on me that they knew I could not complete and terminated me when I refused the assignment.

(*Id.*) On or about May 14, 2001, Shannon filed an amended charge where she added Local as a respondent, listing a Chicago address but no phone number. (Local Mot. Ex. 2, hereinafter referred to as the "amended charge.") Shannon alleged the same facts in both the original charge and amended charge. (*Id.*) On or about September 21, 2001, Shannon received a "Right to Sue" letter from the EEOC. (Am. Compl. ¶ 4.) On or about December 19, 2001, Shannon filed the instant action against International and Local.

## DISCUSSION

### A. International's motion to dismiss

International argues for dismissal as a defendant because (1) Shannon's original charge, dated November 15, 2000, is barred by the statute of limitations; and (2) International was not Shannon's employer under Title VII and the EPA based on its trusteeship over Local.

*1. Statute of limitations*

In Illinois, "[a] plaintiff . . . must file a charge of discrimination with the EEOC or equivalent state agency within 300 days after the 'alleged unlawful employment practice.'"

*Sharp* v. *United Airlines, Inc.*, 236 F.3d 368, 372 (7th Cir. 2001), quoting 42 U.S.C. § 2000e-5(e)(1). "The 300-day limit . . . begins to run when the defendant has taken the action that injures the plaintiff and when the plaintiff knows she has been injured, not when [she] determines that the injury was unlawful[.]" *Id.* (internal citations and quotations omitted). This is known as claim accrual. *See Cada* v. *Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1991) (stating "[a]ccrual is the date on which the statute of limitations begins to run."). Shannon filed her original charge against International on November 15, 2000 and thus any discriminatory conduct occurring prior to January 21, 2000 presumptively is time-barred.

According to Shannon's amended complaint, her relationship with International may be separated according to (a) when International employed Shannon as an International Organizer; and (b) when International held the trusteeship over Local, which employed Shannon as a Business Representative. With respect to (a), International asserts that Shannon seeks to pursue claims against it for when it employed her as an International Organizer. Indeed, Shannon alleges that International engaged in discriminatory conduct when it terminated her around August 1999 for not relocating outside of Illinois. Shannon responds that she is pursuing claims against International for the period of the trusteeship. Thus, the court accepts the representation that Shannon does not assert a claim under (a). In any event, such a claim is time-barred. Rather, these allegations serve only as background.

With respect to (b), Shannon alleges that International, while serving as Local's trustee, engaged in discriminatory conduct against her from December 1999 to June 2000. Clearly, the December 1999 to January 20, 2000 time period is not within the 300-day period although the trusteeship continued into the limitations period. Thus, any claim resting on an adverse employment action occurring before January 21, 2000 is time-barred unless it comes under the continuing violation doctrine, a matter not addressed on this motion. *See Tinner* v. *United Ins. Co. of Am.*, 308 F.3d 697, 707-08 (7th Cir. 2002), *pet. for cert. filed* Jan. 8, 2003 (discussing what acts constitute continuing violations).

2. *International's employer liability under Title VII and the EPA*

Under Title VII, a defendant must be an employer to be liable. 42 U.S.C. § 2000e(b); *see Williams v. Banning*, 72 F.3d 552, 554 (7th Cir. 1995) (applying *E.E.O.C. v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1279 (7th Cir. 1995), to hold that individuals who do not meet Title VII's definition of employer cannot be held liable under Title VII). The same applies to the EPA. *See* 29 U.S.C. § 203(d); *Anderson v. Aurora Township*, No. 97 C 2477, 1997 WL 769461, at *2 (N.D. Ill. Dec. 9, 1997) ("Districts courts analyzing the EPA's definition of employer have arrived at the same conclusion [as courts analyzing Title VII cases] by similar reasoning.").

International argues that it is not liable to Shannon as an employer because it merely held a trusteeship over Local. International relies on *Campbell v. Int'l Bhd. of Teamsters*, 69 F. Supp. 2d 380, 385-86 (E.D.N.Y. 1999), for its position that International and Local are not a single employer under Title VII. In circumstances similar to those presented here, the court in *Campbell* applied the Second Circuit's "single employer" test to hold that the defendant-international union was not the plaintiff's employer under Title VII based solely on its trusteeship over the local union.[2] 69 F. Supp. 2d at 385 (further stating "[u]nder the single employer theory, 'a wronged employee may impose liability on an entity that, although not his employer of record, exercises sufficient control over employment decisions to bear responsibility for the wrong in question[,]'" quoting *Murray v. Miner*, 876 F. Supp. 512, 515 (S.D.N.Y. 1995)). *Campbell*, however, is not good authority because the Second Circuit's single employer test is the same as the "integrated enterprise" test referred to in *Papa v. Katy Ind., Inc.*, 166 F.3d 937, 939 (7th Cir. 1999),[3] which the Seventh Circuit no longer applies to Title VII claims. *Worth v. Tyer*, 276 F.3d

---

[2] The Second Circuit's single employer test considers "whether the two entities have: (1) interrelated operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control." *Campbell*, 69 F. Supp. 2d at 385. The court in *Campbell* determined that the plaintiff failed to allege facts under requirements (1), (3) and (4). *Id.* at 385-86. With respect to requirement (2), the court found that the plaintiff alleged the international union had control due to the appointment of the trustee and based on the trustee's employment decisions.

[3] The court in *Papa* recognized the "integrated enterprise" factors as "interrelation of operations, common management, common ownership, and centralized control of labor relations and personnel." 166 F.3d at 939.

7

249, 260 (7th Cir. 2002) ("this Circuit no longer applies the 'integrated enterprise' test to Title VII claims[,]" citing *Papa*, 166 F.3d at 941-43); *Papa*, 166 F.3d at 942 (further recognizing "[w]here a focus on integration makes sense is in the original context of the [integrated enterprise] test: the determination by the National Labor Relations Board of whether it has jurisdiction over an employer or, even more clearly, what the appropriate bargaining unit is.").[4]

Instead, this court applies the "single employer" test as set forth in *Worth*, 276 F.3d at 260. *See Walker v. Marca Constr. Inc.*, No. 02 C 3285, 2003 WL 297529, at *3 (N.D. Ill. Feb. 11, 2003). Under *Worth*, the affiliated employer forfeits its limited liability if (1) the plaintiff "pierces the corporate veil"; (2) the affiliated employer acts with the express purpose of avoiding liability under the discrimination laws; (3) the affiliated employer directs the discriminatory act, practice, or policy in question; or (4) the affiliated corporation is liable based on the misdeeds of its predecessor through successor liability. 276 F.3d at 260, citing, *inter alia*, *Papa*, 166 F.3d at 941. Here, Shannon argues that her facts demonstrate that she meets the first and third approaches under *Worth*.

It is not necessary to address the merits of Shannon's piercing the corporate veil argument under the first criterion because Shannon meets the third criterion, in that International directed the discriminatory conduct towards her. Shannon alleges that her work environment adversely changed during the trusteeship and/or in response to her discrimination complaints, namely, unlike her male counterparts, she no longer had a vehicle and cellular phone; she had to perform administrative tasks for her male counterparts; and she received a new territory assignment that previously went to two male counterparts and that consisted of high crime areas where she was not allowed to take another representative with her although Local previously allowed

---

[4] *See* discussion *supra* note 2. To the extent that the *Campbell* court's reasoning applies to this case such that the trustee appointed by International acted solely on Local's behalf, unlike here, the court in *Campbell*, 69 F. Supp. 2d at 385-86, relied on facts before it such as the international union's constitution to determine the obligations of the trustee. *Cf. E.E.O.C. v. Ceres Terminals, Inc.*, No. 99 C 5320, 2001 WL 109811, at *7-9 (N.D. Ill. Feb. 5, 2001) (ruling in favor of the defendant-international union on summary judgment after applying the *Campbell* court's reasoning to the facts and determining that the trusteeship did not confer employer liability according to agency law under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.*).

8

representatives to do so. Most compelling, however, is where Shannon alleges that International threatened to terminate her from Local based on an overpayment dispute arising from her former employment relationship with International. This allegation, if proved, would support an inference that International controlled Local's operations. For these reasons, the court will deny International's motion to dismiss on the ground that it is not an employer for Title VII and EPA purposes.

**B.    Local's motion to dismiss**

The parties do not dispute that Shannon's amended charge against Local is untimely and that Shannon failed to name Local as a respondent in her original charge. Instead, the parties dispute whether Shannon may still sue Local under Title VII based on her original charge against International. "Ordinarily, a party not named in an EEOC charge may not be sued under Title VII." *Schnellbaecher v. Basking Clothing Co.*, 887 F.2d 124, 126 (7th Cir. 1989). Nonetheless, there is an exception, referred to as the "*Eggleston* exception," to this general rule where "an unnamed party has been provided with adequate notice of the charge, under circumstances where the party has been given the opportunity to participate in conciliation proceedings aimed at voluntary compliance." *Id.* at 127, quoting *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 905 (7th Cir. 1981); *Olsen v. Marshall & Ilsley Corp.*, 267 F.3d 597, 604 (7thCir. 2001), citing *Schnellbaecher*.

Local argues that courts in this Circuit do not apply the *Eggleston* exception to cases such as this one, relying on, *inter alia, Latuga v. Hooters, Inc.*, No. 93 C 7709, 1994 WL 113079, at *3 (N.D. Ill. Apr. 1, 1994). In *Latuga*, the court dismissed the plaintiff's Title VII claims against the defendant because the plaintiff failed to name the defendant as a respondent in the underlying EEOC charge. Because an attorney prepared the plaintiff's charge, the court deviated from the liberal reading normally given to charges filed by *pro se* litigants. *Id.* at *2. The court determined that the plaintiff failed to allege facts in the charge sufficient to allude to the unnamed defendant because the plaintiff referred only singularly to "respondent" and failed to

9

refer to the existence of the discriminatory policy that the plaintiff alleged in his complaint against the unnamed defendant. *Id.* at *3. Further, the court determined that although the unnamed defendant accepted service of the complaint for the named party, this was done after the EEOC issued the right to sue letter to the plaintiff. Based on these reasons, the court held that the plaintiff failed to meet the *Eggleston* exception because the unnamed defendant did not have actual notice of the charges against it.

Here, Shannon prepared the original charge *pro se* and thus this court liberally construes her charge. Shannon lists only International's name and Washington, D.C. contact information, refers to "respondent" in the singular and fails to allege the trusteeship. (Local Mot. Ex. 1); *see Sloan v. Clorox Corp.*, No. 99 C 0417, 1999 WL 495900, at *3 (N.D. Ill. July 2, 1999) (dismissing a Title VII complaint where the plaintiff listed only her employer's contact information in Illinois whereas the unnamed defendant was located in California and the plaintiff's facts showed she was only referring to her employer). Nonetheless, Shannon's facts also allude to Local where she states that she began her job as a Business Representative in 1992 and that she complained about discriminatory conduct that occurred during the time of the trusteeship. *See Radulescu v. Arthur Goldner & Assocs.*, No. 00 C 0517, 2000 WL 1364405, at *3 (N.D. Ill. Sept. 15, 2000) (holding that the plaintiffs met the *Eggleston* exception because although the defendant was not named in the charge, the plaintiffs alleged that the president of the defendant's company subjected them to harassment during a specified time period). It may also be inferred that International received this charge while it held the trusteeship over Local.[5] With respect to whether International was obligated to and did forward the original charge to Local's office in accordance with the trusteeship and what Local did with the charge, these facts

---

[5] Had the relationship between International and Local been one merely of affiliates, the court's inquiry would proceed no further. *See Landry v. Chicago, Rock Island & Pac. R.R. Co. et al.*, No. 73 C 0773, 1974 WL 1355, at *3 (N.D. Ill. May 22, 1974) (In response to the plaintiff's argument that the international union had a duty to forward the EEOC charge to the local union, the court stated the international union "was under no duty to inform the EEOC about facts about which the EEOC was not inquiring.").

are not within Shannon's knowledge and control, nor does Local rest on lack of actual knowledge of the charge. Accordingly, the court will deny Local's motion to dismiss.

**ORDER**

Wherefore, for the reasons set forth above, the court denies in part and grants in part International's motion to dismiss the amended complaint [#18]. The court dismisses Shannon's claims against International to the extent that Shannon seeks recovery based on discriminatory conduct that occurred while International employed Shannon as an International Organizer. The court denies Local's motion to dismiss Counts I and II [#17]. Defendants are directed to answer Shannon's amended complaint by April 9, 2003. A scheduling conference is set for April 24, 2003 at 9:30 a.m. The parties are directed to make the Rule 26(a)(1), Fed. R. Civ. P., disclosures in the meantime.

ENTER:

_____
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: March 18, 2003